All right, we're going to move to our next case, 25-4062, Kosher Eats v. Welch. Good morning, Your Honors. May it please the Court. Kenneth Chase for the appellants, plaintiffs below. If I could reserve three minutes for rebuttal, that would be fantastic. You have to, as you can see, you have to keep track of your own time. Thank you, Judge. The district court's order should be reversed because the standard set forth in Twombly and Iqbal was turned upside down. This case involves a theft of $8.3 million from small businesses. There was an advance fee fraud scheme that's at issue here. Pursuant to the advance fee fraud scheme, a law firm drafted a very unusual loan agreement. That unusual loan agreement provided that the borrowers would pay to Messner Reeves 25% of the amount of an enormous business loan. This enormous business loan, which was done to scale, and there were commitments made for over $40 million of these loans. These loans were to be at 6%, no personal guarantee, no real estate collateral, no payments for 10 years. Interest only at 6%, no real estate collateral, no personal guarantee, no payments for 10 years, basically free money. The only catch was pay Messner Reeves 25% of that loan, and then Messner Reeves will hold that money, that deposit money, for up to 90 days in its sole possession and control. And if, for whatever reason, the loan doesn't fund, the money will be given back to the customer, to the borrower, to these members of the public. That didn't happen. The BELOC agreement, which was drafted by Messner Reeves, was riddled with false statements. It induced these victims to pay into Messner Reeves' trust account, over $10 million, $8.3 million of which was from the plaintiffs, the appellants. It was paid in, and then it disappeared. And then there were lies. What's at issue here, Your Honor, is the irregular nature of the law firm that perpetrated this advance fee fraud scheme. This law firm has 77 attorneys, experienced attorneys, who identified themselves in every context, publicly, in sworn statements to the court, in referring to each other. Counsel, can I, counsel, help me with this. I'm just having a real difficulty distinguishing between Messner General Partnership and the law firm, Messner Reeves. Can you help me with that? Absolutely, Your Honor. There is a corporate registration called Messner Reeves LLP that is a corporate form that we argue exists concurrently with a unregistered general partnership. That corporate form, Your Honor, has a partnership agreement. That partnership agreement actually wasn't considered by the district court. But even if it was, it contains exactly what was alleged in the First Amendment amended complaint. There are 11 partners in Messner Reeves LLP, not a single human being. All of the 11 partners are corporate forms. Zero of the 77 attorneys who identified themselves. That's not unusual, is it, for a law firm to be set up like that? Maybe it's not. Maybe it is, Your Honor. But it's not in the record how usual or unusual it is. The district court did cite a news article, a Reuters news article, talking about larger law firms, the AMWA law firms, which Messner Reeves is not one of them. Well, let me ask you this. There's no written partnership agreement for Messner general partnership, is there? That's absolutely right, Your Honor. There is not a written agreement. And there does not need to be under a partnership law in Colorado. 764-202, section 1, all a partnership requires is two or more people organized together, conducting a business associated together, for profit. That's it. So I think to kind of tag on to the questions that have been asked. So you allege that there's a limited partnership, which is Messner Reeves, the law firm. You also allege these individuals all worked as lawyers for that limited partnership law firm. You also allege facts that you contend show the existence of a general partnership, the alleged Messner general partnership. And those facts include that the individuals all called themselves partners. They shared office space and resources, contributed resources, et cetera. But these facts could possibly support or be consistent with the existence of a general partnership. But all those facts just as likely point to nothing more than the lawyers working together in a limited partnership law firm, something specifically alleged to exist in this case. So my question is, what facts have you alleged that would push the existence of the Messner general partnership specifically, versus just the law firm, across the line from possible to plausible? That's an excellent question, Your Honor. There's no prohibition of the two corporate forms or the two forms existing simultaneously. There's no prohibition in law. So it's certainly feasible that that occur. What's unusual about this case is that there was an assumption that these attorneys were, quote, income partners. It exists nowhere in the partnership agreement. There's no terminology of what it means to be a non-equity partner. These other law firms that are probably referenced in the Reuters article have terms of engagement or terms that set forth, here is your compensation structure. Here's what it means to be non-equity. You are not a partner here. Here are your voting responsibilities. The assertions that were made by the defense, which none of which should actually be considered in a Rule 12 context, because the allegations are considered in the light most favorable to the plaintiff and accepted as true. The defense's assertion was, we have no paperwork. We have no agreement. We just decide to call each other partners all the time, publicly, in social media posts. We announce lateral partners coming in to join the partnership, coming as a partner. Never was it said that that only means job title. That's just nowhere in the record except defense's unsworn representation. So are you saying that those representations that you just talked about, including by calling each other partners, is that that is somehow inconsistent with the existence and operation of Messner, Reeves, LLP? No. Your Honor, we say it's consistent. We're taking the attorneys at their word. We are saying these lawyers said that they're partners because they're partners in a partnership. They're either partners in a partnership, or they're saying they're partners, but they're not partners at all, in which case they would need some sort of a public disclaimer, or caveat, or limitation. Messner-Reeves is a partnership. It's just a limited liability partnership. Absolutely, Your Honor. Yes, it is. So can't they call themselves partners referring to their position in Messner-Reeves and their relationships, rather than some thing called Messner General Partnership, for which there's no documentation? Of course they could, Your Honor. And it would not be hard for them to do so. They could certainly say, when they swear under oath, as eight of them did in submissions to tribunals, they could say, my job title is partner. However, I am not actually a partner in a partnership. I swear my rate is XYZ. Every time, it was, I am a partner at Messner-Reeves. It didn't say that it was just a job title. But wouldn't your theory of the Messner General Partnership coexisting with the Messner-Reeves law firms essentially give anyone an avenue to skirt the existence of a written partnership agreement? If the facts support it, Your Honor, then perhaps. Your Honor is asking a very good question, which is, what's the limiting principle? The limiting principle is, number one, don't steal $8.3 million and have the existence of a partnership agreement be the linchpin of a RICO claim. That's number one. So this irregularity of the structure is in the context of very damning and very alarming allegations of the theft of a lot of money that's still unexplained and still hasn't been returned. But Your Honor's question is, what would stop plaintiffs from just alleging that a law firm with proper corporate formalities, which this law firm did not have proper corporate formalities, if there are proper corporate formalities, the case wouldn't go anywhere. If these lawyers actually are not partners and actually didn't behave as partners and actually are income partners or whatever it is, and there's documentation as to it, there wouldn't be a viable legal claim. So let me ask you, is a linchpin of your case that the representations that have been made by the individuals involved in Mesner Reeves, that's a linchpin of your case for liability, correct? As to the RICO, Your Honor, it is, because that's the enterprise. Well, that's our focus is the RICO claim. Absolutely, Your Honor. That is the enterprise. All right. All right. Well, you answered my question. It's a linchpin. It is, Your Honor. Yes, it is the enterprise, which is an association of persons that are conducting the racketeering activities, which is at least five counts of wire fraud and at least five counts of transporting stolen. No, no, no, wait a minute. My questions were about Mesner Reeves. You're now talking about Mesner General Partnership. That's correct, Your Honor. Did Your Honor ask a specific question as to RICO as to Mesner Reeves LLP? My question was, which I thought you answered, and that is, isn't a linchpin in a RICO claim that the individuals involved in Mesner Reeves LLP, their representations are a linchpin? You know, it's the partnership and things like that. It's a linchpin to your RICO claim. It is. Their representations are important, Your Honor. The linchpin's not exactly the terminology of RICO.   Are they? Are they very important to your RICO claim? Your Honor, I would say that they're in the constellation of facts, all of which are important under the totality of the circumstances, which is the proper standard. It was asserted in some of the briefing by the defendants. Could you explain to me what's the rest of the constellation besides these representations? These attorneys not only represented themselves as partners in all contexts, represented each other when they're talking about each other in all contexts, made public statements about themselves and each other in all contexts. Those are the verbal statements, put themselves out to the public in all contexts as partners. Then also engaged in the activities of the partnership. The actual partnership agreement says only one person has all the control. That's not even logical that a law firm would even function in that manner. So there's an actual way. You're talking about the Mesner Reeves. The Mesner Reeves, actual partnerships, one person has votes. It's not even a partnership. The way it's actually set up, in terms of Mesner Reeves LLP, but the way the law firm actually conducted itself was there's 77 people are practicing law as partners. If I could yield and reserve my time for rebuttal. You may. Thank you, Judge. Good morning. Excuse me, I'm overcoming a cold. Good morning, my name is Troy Rackham from the Law Firm of Spencer Fane. And I'll be arguing on behalf of all of the appellees today. As the briefs make clear, and as Your Honor's questions make clear, plaintiff's appeal on the RICO claim rises and falls based on the enterprise element. And the law is very clear, enterprise needs to be distinct from the enterprise defendants. But the appellants never pled cognizable RICO enterprise distinct from the defendants because the alleged Mesner General Partnership doesn't exist. And the law is clear that the fact that a lawyer represents himself in an email or an affidavit as a partner doesn't convert to some general partnership status under partnership law, both under Colorado Uniform Partnership Law and the federal cases cited in the briefs. The case law is very clear on that topic. But even if the plaintiff alleged sufficient facts, which accepted as true, would establish a plausible Mesner General Partnership theory, plaintiff's RICO claim failed on the other elements. They didn't allege personal participation in operation by the defendants in the enterprise or a sufficient pattern of continuity. And they failed under Rule 9b. But let's talk about the focus, which is the general partnership piece of it. And Your Honor, Judge Murphy, you asked the question, what facts push it across, or I'm sorry, the question was asked, what facts push this beyond the idea of possible to plausible, the idea of a general partnership? And the answer is none because the critical part of being a general partner under Colorado law and under even the Tenth Circuit law that interprets Colorado law is ownership in the enterprise and participation in profits and losses. And there is not a single fact in the plaintiff's first amended complaint that suggests any of these 77 individuals were, to use the words of Judge Easterbrook in that Seventh Circuit case, in his concurring opinion, that they were on the hook for the losses. And that's the key part of being a partner as opposed to an employee. And the fact, and Colorado statute is clear, the fact that an employee gets paid compensation, which of course comes from the profits of the organization, doesn't make that person a partner merely because they get paid compensation for it. They have to be entitled to get paid profits and be entitled to participate in the management and ownership of the partnership. And there are no allegations that any of the 77 individuals had the right to participate in the management or operation of the law firm, or that most critically, they agreed to share profits and losses. There was a question asked, or an argument made, that there's no terminology about use of non-equity partners in the affidavits or other representations made by these lawyers. That doesn't matter. The plaintiffs specifically alleged that these 77 individuals were employees of Mesner Reeves. Mesner Reeves has a amended and restated partnership agreement that was submitted in the record. It has the certificate of registration with Colorado Secretary of State, which was a public record, and the trial court could properly consider. And it's really indisputable that there is a law firm called Mesner Reeves that is a limited liability partnership, and that law firm has lawyers who are employed by the law firm using the title as partner. But that doesn't convert them somehow to a general partner in a partnership, operating outside of the context of the law firm. And that's critical, because the law firm itself, Mesner Reeves Limited Liability Partnership, couldn't be the RICO Enterprise when all of the RICO defendants are simply employees of the law firm, because there's no distinctness between the enterprise and the RICO defendants, and 10th Circuit law is very clear on that topic, based on US Supreme Court law. And Judge Murphy, you asked, what is the difference between the Mesner Reeves firm, the Limited Liability Partnership, and the Mesner General Partnership? The answer is nothing. There's no difference. These lawyers were acting as employees of the Mesner Reeves Limited Liability Partnership, and they used the title partner because law firms, particularly in today's day and age, have equity partners, non-equity partners of counsel, employees. None of those labels are dispositive of whether a lawyer working in a law firm is a partner as compared to an employee. And the Seventh Circuit's decision in that Judge Easterbrook concurring opinion that I referenced is very persuasive on that, the EEOC versus Sidley, Austin, and Brown, and Wood. But you don't even need to go to the Seventh Circuit because the Supreme Court's decision in the Clackamas case is very clear. But the fact that a physician was referring to him or herself with some designation is not even relevant to the question of whether that physician was a partner as compared to an employee. And Judge Murphy, you also asked the question, it's not unusual for a law firm to operate this way. That's true. It's true not only from the Reuters article that the district court cited, but it's true from these cases that I referenced, the EEOC versus Sidley, Austin, Brown, and Wood case, the Clackamas case, and the other cases cited, and I believe it was footnote 12 of Appelli's brief, which are clear that the fact that a lawyer calls him or herself partner is not dispositive of the partnership status or the employment status of the law firm. And the plaintiffs advanced all sorts of theories about partnership by estoppel or partnership by representation. None of those are sufficient under the Colorado Uniform Partnership Act to establish a general partnership operating outside of Messner Reeves because there were no allegations, and there could be no allegations, that these individuals had the right to participate in the profits, and as critically, the losses of the law firm, or that they had to invest anything in the law firm in terms of capital that they put at risk to become a partner in the law firm. And even if every fact pled in the first amended complaint was accepted as true, the legal elements required to establish a general partnership are missing, the legal element of sharing in profits and losses, participation in the ownership and management of the firm, and compensation that's not just compensation, but compensation as a percentage of profits. None of those are contained in the first amended complaint. Instead, they allege benign allegations, which would apply to every law firm with which I'm familiar. The lawyers practice together. They share work together. The revenue that comes into the law firm is used to pay compensation. The lawyers represent themselves in affidavits as partners. None of that would be sufficient to establish a general partnership under Colorado law, and it's pretty common for law firms to participate in that way. If you accepted the plaintiff's view and took it to its logical extreme, a law clerk, a first year law student who's doing a summer law clerk in the law firm and represents themselves as sharing in the work, being a part of a practice group, participating in moving the work around, that person would be a partner. That's simply not plausible. But, counsel, that person wouldn't call themselves a partner. They'd call themselves a law clerk, right? Well, it depends. I mean, we don't know. We don't know. It depends on what the law firm, I suppose, would authorize for that person. I mean, if I were a participant in the management of a law firm, I'd say, no, you should call yourself a law clerk instead of partner. But the point is the nomenclature used by that person is not sufficient to conclude that that person was a partner as opposed to something else. You need investment in the law firm. You need participation in the profits and losses. And none of those facts were alleged. And the district court was correct in deciding that. But even if you move beyond that, yes, yes. Counsel, it's unclear that one significant defect in the allegations is that there's no allegations of sharing in losses. That's correct. Can you just list for me the other critical absences of allegations? What are the absence of allegations? List them for me. That are very important to undercut the existence of Mesner General Partnership as an enterprise. Sure. So in addition to the sharing in losses, there's no allegation of investment of personal capital into the firm to operate the firm, which is an indicia of partnership. Typically, two or more people get together, invest money into the entity, and then the entity does its purpose. There's also- Can you have a partnership without that? You could have a partnership without investment of money as capital. You couldn't have a partnership without something that indicates ownership of the partnership. So for example, in Colorado cases, we cited them in the briefs, you could have a partnership if one person in the partnership is contributing labor and the other person in the partnership is contributing capital, or one's contributing land and one's contributing labor, something like that. But there are no allegations here that there were any personal contributions from any of these lawyers outside of labor, which of course would be a fact more indicative of the fact that they're employed by the law firm. Necessarily. What are other deficiencies? Sure. What are the most deficient deficiencies in favoritism or what else? Sure. Participation in the ownership and management of the firm. And you heard Mr. Chase respectfully say, based on the amended restated partnership agreement that a Mesner Reeves LLP has, there's only one person who manages the law firm. That's frankly not unusual. It makes sense for a large organization to designate one person to manage the law firm and that person can then delegate. But there's no allegation that any of these 77 individuals had regularly attended management meetings, directed the operation of the law firm, in particular ways, had the authority to tell any of the other 77 individuals, you must do this or you must do that, could deprive them of compensation if they failed to meet expectations, those sorts of things. And then the final piece is participation in profits per se, meaning not receiving compensation as wages or as an employee, but receiving compensations as a percentage of the profits. There's never any allegation that any of these individuals received some additional form of compensation or different form of compensation as a percentage of the profits of the law firm. And those are the essential elements. That's no different than your primary view that the most important allegation that's missing is that there's no sharing of profits or losses. That's the same thing, isn't it? It's part of that. It's the profits piece of it. The losses piece of it is also an essential component. And then one other thing that I omitted, and it's referenced in the EEOC versus Sidley, Austin, and Wood case and other cases, and that is receipt of some indicia of ownership. So either a share that suggests you have x amount of shares in the partnership, or something that suggests that the individual person has some ownership. And there's no allegation that any of these 77 individuals received something that suggests they owned a portion of the firm. What about, it's quoted in the district court's order. It's also paragraph 90 of the first minute complaint where it says, the general partnership defendants jointly decided on new and existing client engagements, work allocation, and revenue and profit division. Why is that not sufficient for the sharing of profits? Several reasons. One, it's inconsistent with the limited liability partnership certificate that was filed with the district court. But second, the allegation that they participated in the profits was an allegation that they get compensated from the profits. And Colorado statute removes, or says, when compensation is paid as a portion of the profits, but it's paid for exercise of labor, that that's not a share of the profits. Instead, a share of the profits would be the law firm at the end of the year has $100,000 in profits, and the five partners participate in some percentage in that $100,000 as profits, as opposed to they get a paycheck every two weeks, or they get a paycheck every month, or something like that. The other parts of the allegation in paragraph 90 are just ordinary run-of-the-mill allegations of any lawyer working in a law firm. They jointly share cases, they share resources, they print from the same printer, they have the same secretary, all of those kinds of things, which would not be clearly sufficient under Colorado law. So for that, we ask the court to affirm the district court's dismissal for failure to state a claim. Thank you. Your Honors, the majority of the discussion there was about proof standards and not pleading standards. It's apples to oranges. There's no requirement that sharing in losses or contribution of capital, first of all, those are not requirements for a partnership anyway, but there is no case that talks about pleading standards. The Seventh Circuit cases, the Judge Easterbrook cases, those are cases on a full record at trial, what must be proven. There is not a case that says that if you allege that two or more persons carried on a business as co-owners for profit, and a lot more, paragraphs 83 to 98 set forth all sorts of information about how the partnership operated. There's no case that they cite that says that's insufficient. And what the district court did is said, well, I feel like that applies to a lot of contexts. Therefore, it's implausible. Wait a minute. If it applies to a lot of contexts and it's commonplace, then it's actually more plausible, not less plausible, that it's actually a partnership. There can be two different court reports. Is there a specific allegation in the omitted complaint of the sharing of profits and losses amongst the participants of the Messner General Partnership? Absolutely, Your Honor. Paragraphs 90 and 92. Paragraph 90 talks about profit division. And paragraph 92 talks about revenue sharing. It is not required that the allegations include loss sharing. That's not a pleading requirement. Nor would we have a basis to say that there are. I'm interested. You know, what was the source of your ability to allege a share of profits? All the information. Let me finish my question. You did not have a source to allege they shared any losses? You had no basis to allege they shared any losses? Is that correct? I can't speak about the burdens of proof in the investigation that exists. But I can say that there's a lot of inconsistency with reality versus what was proffered as to the LLP agreement. We've seen no employment contracts. My question is, what is the source of the basis for alleging sharing in profits? A lot of publicly available information. Is that publicly available information alleged in the complaint? The source of how, as in, have we seen the way that they actually calculate the compensation structure? Your Honor, we haven't seen that. No, no, no, no. You allege that they shared in profits. I just want to know what the source of that allegation is. All the information that we've seen. And if it's not alleged, just say it's not alleged. It is alleged, Your Honor. And what is alleged is the source of that information. The source of the information is all the information that has been conducted in the investigation of this set of circumstances. I can't give a laundry list of it. I could circle back with a more detailed explanation of exactly how this comes to be a allegation. But I can't say that we've seen any of the records that they could provide. Thank you. Thank you, Your Honor. Thank you. Thank you, counsel, for your helpful arguments. And the case stands submitted.